[No. C002202. Third Dist. Dec. 30, 1987.]

WILLIAM B. GILBERT, Plaintiff and Appellant, v.
CITY OF SACRAMENTO et al., Defendants and Respondents.

COUNSEL

Hubbert, Shanley & Lee and E. A. Hubbert, Jr., for Plaintiff and Appellant.

James P. Jackson, City Attorney, and Samuel J. Jackson, Deputy City Attorney, for Defendants and Respondents.

OPINION

**SIMS, J.**—In this case, we hold that subdivision (c) of section 10404 of the Streets and Highways Code precludes the claim of a property owner that his property was assessed too much because a city gave him tardy notice of the confirmation of an assessment under the Municipal Improvement Act of 1913. (Sts. & Hy. Code, § 10000 et seq.; all further statutory references are to this code unless otherwise noted.)

Plaintiff appeals from a judgment of dismissal entered after defendants' demurrer to the second amended complaint was sustained without leave to amend. Plaintiff contends it has stated a cause of action for declaratory relief. We disagree and shall affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

The facts alleged in the second amended complaint, which we accept as true (*Committee on Children's Television, Inc.,* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213 [197 Cal.Rptr. 783, 673 P.2d 660]) are as follows:

On or about December 18, 1984, the Sacramento City Council adopted resolutions which led to the creation of the Morrison Creek Assessment District under the Municipal Improvement Act of 1913. On or about that same date the city clerk issued an informational notice to property owners which indicated the city was engaged in proceedings which would result in the creation of an assessment district. The notice indicated that February 12, 1985, was the date upon which a final determination resulting in an assessment would be made. The notice further provided: "A period of thirty (30) days will be allowed to pay assessments in cash."

The matter was continued by the city council from time to time until March 12, 1985. On that date the city council passed and adopted various resolutions which created the Morrison Creek Assessment District. On the same day, the city issued a notice to pay assessments to the plaintiff. However, the notice was not postmarked in Sacramento until March 26, 1985, and was not received by the plaintiff until March 29, 1985. The notice stated "Assessments are due and payable immediately . . . and must be paid within the period expiring April 15, 1985." The notice further stated, "Note: If your assessment is paid *in cash* by the close of business on April 15, 1985, it will be reduced . . . ." (Italics in original notice.)

The second amended complaint alleges that because the time actually afforded for payment in cash was only 20 days (Mar. 26 to Apr. 15) instead of 30 days as promised, plaintiff was unable to effect timely payment.[1] If the 30-day period which had been promised had actually been afforded, such payment could have been made. Further, if the city had indicated that only 20 days would be allowed, then special provisions might have been made to arrange timely payment.

The assessment is now due and owing in full ($74,762.76 plus interest) and the plaintiff was not, and is not, being afforded 30 days to pay the reduced assessment ($64,669.78) in cash as was promised by the city.

Plaintiff alleges that an actual controversy has arisen between the parties relating to their respective rights and duties under the alleged promise of an allowance of 30 days to pay assessments in cash.

[1] The complaint alleges that Mr. William Gilbert was not in his office on Friday, March 29, 1985. Mr. Gilbert had been out of town for several days beginning on March 27, 1985. Upon his return on April 1, 1985, Mr. Gilbert passed the notice along to the tenant on the subject parcels. The tenant contacted its attorneys and forwarded the March 29 notice to the attorneys requesting advice as to the best course of action. The March 29 notice arrived at the office of the attorneys after Wednesday, April 3, 1985. At this point, the earliest the board of directors of the tenant could have met was Monday, April 8, 1985, leaving only five business days in which to give the matter due consideration, gather $65,000 for payment, and deliver the funds to the city by April 15.

The city demurred to the second amended complaint. The demurrer was sustained without leave to amend. A judgment of dismissal was entered and plaintiff appeals.

### DISCUSSION

Plaintiff's original complaint was filed on August 7, 1986, about a year and a half after the assessment was levied and bonds were issued.

The trial court sustained the demurrer on the grounds that the complaint was barred by the statute of limitations and laches and that it failed to state a cause of action. We need consider only the latter ground.

The promise alleged to have been made by the city, contained in their notice of December 18, was: "A period of thirty (30) days will be allowed to pay assessments in cash."

Plaintiff has not pled, nor can it, that plaintiff was not allowed 30 days from the recordation of the assessment on March 12, 1985, to pay the assessment in cash, as required by the 1913 act. (§ 10403.) The city's notice of December 18 did not represent that plaintiff would receive *additional notice* of its right to pay in cash, and the notice cannot reasonably be so construed. ■ Plaintiff's only colorable pleaded claim is that it did not receive timely notice of the recordation of the assessment within 30 days of March 12 as required by statute.

Section 10404 requires that notice of recordation of assessment be mailed "Upon recording of the assessment, . . ." (*Id.,* subd. (b).) Plaintiff's complaint pleads that the required notice was not timely mailed. However, subdivision (c) of that statute says, "The failure of the collection officer to mail the notice to any property owner or the failure of any property owner to receive the notice shall not affect the validity of any proceedings taken under this division." (See also § 10014.) As we shall explain, imposition of an increased assessment as a consequence of plaintiff's failure to pay cash within 30 days resulted from "proceedings" within the meaning of subdivision (c) of section 10404.

Under the Municipal Improvement Act of 1913, bonds may be issued under the provisions of the Improvement Act of 1911 or the Improvement Act of 1915.[2] (§ 10600.) Here, bonds were issued under the Improvement Act of 1915. (§§ 8500-8887.) The increased costs levied upon plaintiff's

---

[2] We take judicial notice of various resolutions of the city which were before the trial court regarding the assessment at issue. (See Code Civ. Proc., § 430.30, subd. (a); Evid. Code, §§ 452, subds. (b), (h), 459.)

property were the result of the need to issue bonds covering plaintiff's assessment because plaintiff did not pay the assessment within 30 days. These increased costs included printing of bonds and publication of notice (§ 8624), costs of administration and collection of installments due on the bonds (§ 8682), the creation of a special reserve fund to cover any unpaid assessments (§§ 8880-8887), and the payment of interest necessary to redeem the bonds issued to cover the assessment on plaintiff's property (§ 8687). These increased costs were imposed on plaintiff's property by various resolutions of the city and particularly by Resolution 85-347 of May 9, 1985, entitled "A Resolution Determining Unpaid Assessments and Providing for Issuance of Bonds."

These resolutions, and particularly Resolution 85-347, were "proceedings" within the meaning of subdivision (c) of section 10404. If successful, plaintiff's claim would necessarily invalidate these resolutions to the extent they prescribe the amount of plaintiff's bonded assessment. However, subdivision (c) of section 10404 immunizes these proceedings from plaintiff's claim of tardy notice. (See *Allis-Chalmers Corp.* v. *City of Oxnard* (1981) 126 Cal.App.3d 814, 822 [179 Cal.Rptr. 159].)

The trial court correctly concluded the amended complaint failed to state a cause of action.

The judgment is affirmed.

Evans, Acting P. J., and Marler, J., concurred.